UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSHUA FIKES,                                    Civil Action No. 1:10-cv-021
          Petitioner,

                                                 Spiegel, J.
     vs.                                         Litkovitz, M.J.

WARDEN, WARREN CORRECTIONAL          **REPORT AND RECOMMENDATION**
INSTITUTION,
          Respondent.


          Petitioner, an inmate in state custody at the Warren Correctional Institution, has filed a

pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is

before the Court on the petition, respondent's return of writ, and petitioner's traverse. (Docs. 1,

7, 11).

## I.    FACTUAL  BACKGROUND

          The Ohio Court of Appeals, First Appellate District, provided the following summary of

the facts that led to petitioner's conviction and sentence:[1]

> [*P4] On June 7, 2005, leading into June 8, 2005, Fikes had been selling drugs on
> a street corner near DeAndre Preston's apartment in the Walnut Hills section of
> Cincinnati. According to Fikes, Preston had confronted him about selling drugs in
> that area. Following the confrontation, Preston had entered his apartment.
> Preston's girlfriend, Rachel Tobin, testified that Preston had told her that she
> needed to get her belongings together and leave. Preston had told her that "they
> out here tripping," meaning that Fikes had been talking about what he would do to
> Preston and Preston's family.
>
> [*P5] According to Tobin, she leaned out the apartment's window and, seeing
> Fikes on the street below, asked him "why" several times. Tobin and Fikes argued

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by
a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State
court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."
Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals'
factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v.
Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

back and forth. Fikes pulled out his gun and fired it into the air, instructing Tobin to have Preston come out and fight him.

[*P6] Tobin testified that Preston had arranged for a bootleg cab to pick up her and their child. According to Tobin, as Preston was paying the cab driver, Fikes came running around the corner with a gun. The cab driver started to pull away, and Tobin saw both Fikes and Preston running around a bend in the road. Tobin jumped out of the cab and started running back down the street because she had heard gunshots. Tobin heard shooting back and forth and viewed Fikes pursuing Preston. Tobin saw Preston fall to the ground.

[*P7] At trial, Fikes argued that he had shot Preston in self-defense. According to Fikes, he had returned to the corner near Preston's apartment after making a drug sale at a different location. When he returned, he saw Tobin driving down the street. Fikes made eye contact with Preston, and Preston told him to start showing respect for Preston's girlfriend. Fikes told Preston that he was not afraid of Preston, and the two agreed to fight. Fikes testified that Preston had told him to put down his gun, and he had complied. Fikes had approached Preston to begin the fight when Preston pulled out a gun, put it against Fikes' head, and pulled the trigger. Fikes heard a click, but the gun did not fire. Preston then used the gun to strike Fikes in the face. According to Fikes, he was able to pick up his own gun. Fearful of Preston and that Preston would attempt to take his gun, Fikes shot Preston twice. Fikes testified that he did not intend to kill Preston, but shot him because he had feared for his own life.

[*P8] Gary Utz, Chief Deputy Coroner for the Hamilton County Coroner's Office, testified that he had performed an autopsy on Preston. Utz testified that Preston had died after receiving a gunshot wound to his chest. The bullet had injured his vena cava, causing extensive hemorrhaging in Preston's chest cavity. Utz further testified that because no stippling was present around the wound, the injury was consistent with the gunshot coming from a distance greater than one foot away.

[*P9] Robert Michael Lenhoff, a firearms examiner for the Hamilton County Coroner's Office, testified that he had examined a .380-caliber handgun found at the murder scene. Lenhoff additionally examined an unfired cartridge case that had been removed from the chamber of the gun. The cartridge case had an apparent firing pin impression on it, indicating that a firing pin had struck the primer at the back of the cartridge. But Lenhoff was unable to determine when a firing pin had made such an impression. Nor could he determine whether the impression was made by the firing pin in the .380-caliber handgun he had examined, although the mark was consistent with this handgun. According to Lenhoff, if a handgun had its safety on, its firing pin could not have made such an impression.

2

[*P10] Robert Carpenter, a criminalist for the Cincinnati Police Department, testified that he had found a .380-caliber handgun at the murder scene. The gun's safety was on when found, and the gun was neither cocked nor ready to be fired. It was found approximately 24 feet away from Preston's body.

[*P11] Robert Randolph, a detective in the Cincinnati Police Department's homicide unit, testified about his investigation into Preston's homicide. On June 9, 2005, Randolph learned that Fikes had been apprehended in Kansas, and he and Detective Mike Drexelius flew to Kansas to obtain a statement from Fikes. Fikes' statements to Randolph and Drexelius largely conformed to the testimony that he later provided at trial. Randolph testified that, early on in the interview, Fikes had asked him if Preston's gun had been recovered. And Randolph had noticed an injury to Fikes' face, which was consistent with Fikes' statement that Preston had struck him with a gun. According to Randolph, Fikes stated during the interview that he did not think that Preston's gun worked, or that it did not have any bullets in it. Randolph stated that Fikes revealed that he had fired his gun into the air near Tobin's apartment window because he was angry.

(Doc. 7, Ex. 7, pp. 2-5).

## II. PROCEDURAL HISTORY

### State Court Proceedings

On June 30, 2005, the Hamilton County, Ohio grand jury returned an indictment charging petitioner with two counts of Murder in violation of Ohio Rev. Code § 2903.02(A) and (B) and one count of Having Weapons While Under Disability in violation of Ohio Rev. Code § 2923.13(A)(3). (Doc. 7, Ex. 1). Each of the counts included firearm specifications. *Id.* Through counsel, petitioner entered a plea of not guilty on all counts.

On June 30, 2006, the jury found petitioner guilty of one count of Murder under Ohio Rev. Code § 2903.02(B) with specifications and Having Weapons While Under Disability with specifications. (Doc. 7, Ex. 3). Petitioner was acquitted of the second count of murder. *Id.* Petitioner was sentenced to consecutive terms of imprisonment of fifteen years to life for his murder conviction and four years for having weapons while under disability. *Id.* Additionally,

3

petitioner received a sentence of three years for the firearm specifications, to be served prior to

and consecutive with his other sentences. *Id.*

## State Direct Appeal

Through different counsel, petitioner filed a timely appeal to the Ohio Court of Appeals.

(Doc. 7, Ex. 4). Petitioner raised eight assignments of error:

1. The trial court erred to the prejudice of Defendant-Appellant because he was denied his right to effective assistance of counsel as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I, of the Ohio Constitution.
2. The trial court erred by failing to instruct the jury on the inferior offense of voluntary manslaughter.
3. The trial court erred to the prejudice of Defendant-Appellant as his convictions were not supported by sufficient evidence.
4. The trial court erred to the prejudice of Defendant-Appellant as the jury's verdict was contrary to the manifest weight of the evidence presented at trial.
5. The trial court erred to the prejudice of the Defendant-Appellant by preventing him from testifying about his subjective knowledge of the deceased's past violence behavior when he presented a defense of self-defense.
6. The trial court erred to the prejudice of the Defendant-Appellant by permitting the prosecution to use a juvenile adjudication to impeach the Defendant-Appellant during his testimony.
7. The trial court erred to the prejudice of the Defendant-Appellant by permitting the detective to testify that in his opinion Fikes was the aggressor in his confrontation with the deceased.
8. The trial court erred by sentencing Defendant-Appellant to maximum consecutive sentences.

(Doc. 7, Ex. 5). On November 2, 2007, the Ohio appellate court affirmed the judgment

of the trial court. (Doc. 7, Ex. 7).

## Ohio Supreme Court

On December 17, 2007, petitioner filed a timely appeal to the Ohio Supreme Court.

(Doc. 7, Ex. 8). Petitioner asserted the following propositions of law:

I.  A defendant is denied his right to effective assistance of counsel as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I, of the Ohio Constitution, when counsel fails to state appropriate objections at trial, fails to take the necessary steps to protect his client's rights, advises his client to testify in a manner that makes his client appear dishonest to the jury, fails to request appropriate jury instructions, and makes disparaging comments about his own client.

II.  A defendant in a murder case is denied his Sixth Amendment right to a trial by jury when the trial court fails to properly instruct the jury of the inferior offense of voluntary manslaughter when there is significant evidence of provocation.

III.  A defendant's constitutional right to due process is violated when he is convicted of a criminal offense that is not supported by sufficient evidence or is against the manifest weight of the evidence presented at trial.

IV.  In a case where self-defense is presented, a defendant is denied his right to a fair trial and due process of law when the trial court precludes him from testifying about his subjective knowledge of the deceased's past violent behavior.

V.  A prior juvenile adjudication cannot be used to impeach the credibility of a witness.

VI.  It is prejudicial error to permit a non-expert witness to render an opinion as to who was the aggressor in a confrontation with the deceased when that was the ultimate issue of the case, and was a matter to be decided by a jury.

VII.  It is a violation of the constitutional prohibition against ex post facto law making to apply the unfettered sentencing standards of *Foster* when the alleged offense took place before *Foster* was decided.

(Doc. 7, Ex. 9). On March 12, 2008, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal "as not involving any substantial constitutional question." (Doc. 7, Ex. 11). On March 20, 2008, petitioner filed a motion for reconsideration (Doc. 7, Ex. 12) which was denied on May 12, 2008. (Doc. 7, Ex. 13).

5

**Application to Reopen Appeal**

On November 26, 2007, while his direct appeal was pending, petitioner filed a pro se application to reopen his appeal pursuant to Ohio Rule of Appellate Procedure 26(B). (Doc. 7, Ex. 14). Petitioner claimed that his appeal should be reopened because his appellate counsel was ineffective for the following reasons:

1. Appellate counsel was ineffective for failing to file a notice of appeal on the caption case [No. B 0409872], within 30 days after journalization of judgment and sentence.
2. The appellate counsel was ineffective for failing to challenge under review the imposed sentence of eighteen months, which is contrary to law.

(Doc. 7, Ex. 14). Petitioner filed a motion to amend his application on December 3, 2007, adding the following claim:

3. Appellate counsel was ineffective for failing to raise the following assignment of error on direct appeal:

   The trial court erred to the prejudice of the Defendant-Appellant by the charge to the jury instructions one has no duty to retreat in one's own home.

(Doc. 7, Ex. 15).

On January 16, 2008, the appellate court denied petitioner's application. (Doc. 7, Ex. 17). The court found that petitioner had "failed to sustain his burden of demonstrating a genuine issue as to whether he has a colorable claim of ineffective assistance of counsel on appeal." *Id.* at 3. In addition, the court found that the doctrine of *res judicata* precluded reopening the appeal on the basis of ground three. *Id.*

On February 29, 2008, petitioner filed a timely appeal to the Ohio Supreme Court. (Doc. 7, Ex. 18). Petitioner set forth two propositions of law:

I. The First District Court of Appeals committed plain error by overruling

> > Appellant's motion to amend his application for reopening pursuant to App. R. 26(B).

> II.     Appellate counsel was ineffective for failing to raise the following assignment on direct appeal: In a case where self-defense is presented by defense, a defendant is denied his Sixth Amendment right to trial by jury and due process of law when a trial court improperly instructs the jury as to the elements of self-defense by its instructions, one has no duty to retreat in one's own home.

(Doc. 7, Ex. 19). The Ohio Supreme Court accepted the appeal and ordered that the case be held pending the decision in *State v. Davis*, 894 N.E.2d 1221 (Ohio 2008). (Doc. 7, Ex. 21). On December 10, 2008, the Ohio Supreme Court reversed the judgment of the court of appeals and remanded the case for further proceedings consistent with *Davis*. (Doc. 7, Ex. 22).[2]

On December 29, 2008, petitioner requested leave to supplement his original 26(B) application. (Doc. 7, Ex. 23). Petitioner sought to include the claim that his appellate counsel's performance was deficient because he failed to challenge on appeal the trial court's admission of the jury instruction that "one has no duty to retreat in one's own home." *Id.* On January 14, 2009, the court of appeals granted his motion to supplement his application to reopen. (Doc. 7, Ex. 24).

On March 2, 2009, petitioner filed a motion for leave to amend his 26(B) application with an additional assignment of error that his appellate counsel failed to present on appeal. (Doc. 7, Ex. 25). Petitioner claimed his appellate counsel was ineffective in failing to bring the following error on direct appeal:

---

[2] *Davis* held that the pendency of an ineffective assistance of appellate counsel claim with the Ohio Supreme Court on direct appeal does not deprive the state appellate court of jurisdiction over a Rule 26(b) application and that the discretionary decision of the Ohio Supreme Court not to accept jurisdiction on direct appeal should not be considered *res judicata* on the issue of ineffective assistance of appellate counsel. *State v. Davis*, 894 N.E.2d. 1221, 1225-26 (Ohio 2008). In this case, petitioner's appeal was pending with the Ohio Supreme Court and the appellate court held that because petitioner could raise the ineffective assistance of appellate counsel claim with the Ohio

7

The trial court erred to the prejudice of Defendant-Appellant because he was denied his right to effective assistance of counsel as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Sec. 10, Art. I of the Ohio Constitution, when counsel failed to confront a State's witness with inconsistencies in his trial testimony, and object to his unqualified opinion as to what would be considered excessive force, and object to the prosecutor's misleading arguments to the jury.

*Id.* On March 25, 2009, the court granted petitioner's motion to amend. (Doc. 7, Ex. 28).

On March 18, 2009, petitioner filed an application for reconsideration of the court of

appeals' November 2, 2007 decision overruling his first and second assignments of error on

direct appeal. (Doc. 7, Ex. 26). On June 5, 2009, the appellate court denied his application

because petitioner failed to comply with the time prescribed by App. R. 26(A).[3]

On March 24, 2009, petitioner filed another motion for leave to amend his application for

reopening. (Doc. 7, Ex. 27). Petitioner sought to add an additional assignment of error that he

claimed his appellate attorney was ineffective for failing to present on appeal:

Defendant-Appellant was denied his right to a fair trial and due process of law as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Sec. 16, Art. 1, of the Ohio Constitution because the prosecutor knowingly used perjured testimony, from a state's witness, at trial.

*Id.* After the state filed a motion in opposition arguing that the motion should be denied as being

untimely filed (Doc. 7, Ex. 29), petitioner filed a motion to withdraw his motion to amend based

on his March 2, 2009 motion to amend having been granted on March 25, 2009. (Doc. 7, Ex.

31). Petitioner reasoned that a second motion for leave to amend was not necessary in light of

the court's granting his prior motion to amend. *Id.*

Petitioner filed a "motion to amend motion for leave to amend application for reopening"

---

Supreme Court, the claim was barred under the doctrine of *res judicata*. (Doc. 7, Ex. 17, p. 3).

[3] "Application for reconsideration of any cause or motion submitted on appeal shall be made in writing before the judgment or order of the court has been approved by the court and filed by the court with the clerk for journalization

on April 14, 2009.  (Doc. 7, Ex. 32).  Petitioner sought to amend his March 2, 2009 motion to

amend, which was granted by the court, to include the perjured testimony assignment of error

contained in his withdrawn March 24, 2009 motion. *See id.*  On April 22, 2009, the court of

appeals denied petitioner's April 14, 2009 motion and granted his motion to withdraw his March

24, 2009 motion to amend.  (Doc. 7, Exs. 33, 34).

On April 30, 2009, petitioner filed a motion to reinstate his March 24, 2009 motion to

amend and a motion to vacate the entry overruling his April 14, 2009 motion.  (Doc. 7, Exs. 35,

36).  The appellate court overruled both motions.  (Doc. 7, Exs. 37, 38).

On May 21, 2009, petitioner filed another motion for leave to amend his application for

reopening, again attempting to include the perjured testimony assignment of error in his 26(B)

application.  (Doc. 7, Ex. 39).  The court overruled the motion.  (Doc. 7, Ex. 40).

Petitioner filed a motion for supplemental pleading on June 1, 2009, moving the court of

appeals to grant him leave to supplement his 26(B) application to include an allegation that his

trial counsel was ineffective "in failing to object and move for mistrial because of prosecutor's

knowing use of perjured testimony."  (Doc. 7, Ex. 41).  The motion was overruled.  (Doc. 7, Ex.

42).

On June 5, 2009, the court of appeals denied petitioner's remanded application to reopen,

finding that petitioner "failed to sustain his burden of demonstrating a genuine issue as to

whether he has a colorable claim of ineffective assistance of counsel on appeal."  (Doc. 7, Ex.

43, p.3).  In its decision, the court considered the following grounds:

> In his application as amended, Fikes seeks to reopen this appeal on the ground
> that his appellate counsel was ineffective in failing to present assignments of error
> challenging (1) the trial court's delivery of an instruction to the jury that "one has

---

or within ten days of the announcement of the court's decision, whichever is later."  Ohio App. R. 26(A)(1)(a).

no duty to retreat in one's home," (2) trial counsel's ineffectiveness in failing to challenge on cross-examination a police detective's allegedly inaccurate and inadmissible testimony concerning Fikes's self-defense claim, and (3) trial counsel's ineffectiveness in failing to object to allegedly improper comments by the assistant prosecuting attorney during closing argument.

(Doc. 7, Ex. 43, p. 2). Petitioner's subsequent motion for reconsideration was denied. (Doc. 7, Exs. 44, 45).

Petitioner filed a timely appeal to the Ohio Supreme Court. (Doc. 7, Ex. 46). He set forth five propositions of law:

I.    When the evidence presents a close case as to whether the accused acted justifiably in self-defense, and the trial court improperly instructs the jury on self-defense, an appellate court is required to consider an incorrect jury instruction in context of the overall charge and must review the entire record to determine whether the jury instruction probably mislead the jury in a matter materially affecting the complaining party's substantial rights.

II.   A defendant is denied his Sixth Amendment right to the effective assistance of counsel on appeal, when appellate counsel fails to assign as error the trial court's admission of an erroneous jury instruction on self-defense that deprived the accused of his right to a fair trial.

III.  A defendant is denied the Sixth Amendment right to the effective assistance of counsel on appeal, when appellate counsel fails to assign as error trial counsel's failure to object to a State's witness' unqualified opinion testimony as to what would be considered excessive force, and object to the prosecutor's misleading arguments to the jury.

IV.   A denial of a motion for leave to amend an application for reopening under App. R. 26(B) constitutes an abuse of discretion when an appellate court fails to disclose any such reason for denying the motion to amend.

V.    A defendant is denied his Sixth Amendment right to the effective assistance of counsel on appeal, when appellate counsel fails to assign as error the prosecutor's knowing use of perjured testimony.

(Doc. 7, Ex. 47). On September 30, 2009, the Ohio Supreme Court dismissed the appeal "as not involving any substantial constitutional question." (Doc. 7, Ex. 48).

**Federal Habeas Corpus**

The instant federal habeas corpus action was filed with the Court on January 15, 2010.

10

(Doc. 1). Petitioner alleges six grounds for relief:

> GROUND ONE:
> Petitioner was denied the effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, when counsel instructed Petitioner to testify only in accordance with his adult record and opened the door for the State to impeach Petitioner's credibility with a juvenile adjudication, thereby making his client and himself appear dishonest to the jury.

> GROUND TWO:
> Petitioner was denied his right to a fundamentally fair trial as guaranteed by the Due Process clause of the Fourteenth Amendment to the United States Constitution, when the trial court erroneously instructed the jury as to Petitioner's self-defense claim, and appellate counsel provided ineffective assistance under *Evitts v. Lucey*, 469 U.S. 387 (1985), by failing to raise this issue on appeal.

> GROUND THREE:
> Petitioner's right to trial by jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution was violated when the Hamilton County Court of Appeals improperly invaded the province of the jury.

> GROUND FOUR:
> Petitioner was denied the effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, when counsel failed to object to a State's witness' inadmissible opinion testimony on self-defense, and appellate counsel provided ineffective assistance under *Evitts v. Lucey*, 469 U.S. 387 (1985), by failing to raise this issue on appeal.

> GROUND FIVE:
> Petitioner was denied the effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, when trial counsel failed to object to prosecutorial misconduct, and appellate counsel provided ineffective assistance under *Evitts v. Lucey*, 469 U.S. 387 (1985), by failing to raise this issue on appeal.

> GROUND SIX:
> Petitioner was denied his right to due process of law as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, because of the prosecutor's knowing use of perjured testimony, and appellate counsel provided ineffective assistance under *Evitts v. Lucey*, 469 U.S. 387 (1985), by failing to raise this issue on appeal.

(Doc. 1).

On May 17, 2010, petitioner filed a pro se motion to expand the record.  (Doc. 10).
Petitioner sought to include as part of the record a copy of his transcribed June 10, 2005 police
interview conducted at the Riley County police station in Manhattan, Kansas.  *Id.*  Petitioner
contends that the transcript demonstrates "that the prosecutor knew or should have known that
Detective Randolph's testimony… was false," as is alleged in Ground Six of the petition.  (Doc.
10, p. 2).  Respondent opposed the motion on the ground that the claim is procedurally defaulted.
(Doc. 13).  On December 30, 2010, this Court granted petitioner's motion, "to the extent that the
exhibit attached to petitioner's motion will be included in the record for consideration by the
Court if necessary for the proper adjudication for petitioner's claim for federal habeas relief."
(Doc. 15, pp. 1-2).

Respondent opposes the habeas petition.  (Doc. 7).  In the return of writ, respondent
contends that Ground One of the petition is without merit and Grounds Two through Six are
procedurally defaulted.  *Id.*

## III. THE PETITION SHOULD BE DISMISSED BECAUSE PETITIONER'S GROUNDS FOR RELIEF ARE PROCEDURALLY DEFAULTED OR WITHOUT MERIT.

In this federal habeas case, the applicable standard of review for addressing the merits of
petitioner's due process claim is set forth in 28 U.S.C. § 2254(d).  Under that provision, a writ of
habeas corpus may not issue with respect to any claim adjudicated on the merits by the state
courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the United States
> Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). The provision applies even in cases where the state courts summarily reject a claim or issue a ruling "unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter,* 131 S.Ct. 770, 784-85 (2011).

A legal principle is "clearly established" for purposes of habeas corpus review "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes,* __ U.S. __ , 130 S.Ct. 1171, 1173 (2010). "[A] federal habeas court reviewing the state-court judgment must apply the law that controlled 'at the time his state-court conviction became final.'" *Miller v. Stovall,* 608 F.3d 913, 919 (6th Cir. 2010) (quoting *Williams v. Taylor,* 529 U.S. 362, 390 (2000)), *petition for cert. filed,* 79 U.S.L.W. 3404 (U.S. Dec. 21, 2010) (No. 10-851).

In addition, the "contrary to" and "unreasonable application" clauses set forth in 28 U.S.C. § 2254(d)(1) have independent meanings:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts... The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.... The focus on the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and ... an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted).

13

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington,* 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87. Moreover, under the "unreasonable application clause" inquiry, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

### A.    Ground One of the petition is without merit.

In Ground One petitioner alleges that he was denied the effective assistance of trial counsel because his attorney opened up the door for impeachment testimony concerning petitioner's juvenile record. (Doc. 1, p. 16). Petitioner contends that upon the advice of counsel, he limited his testimony to his adult record. *Id.* He claims that after counsel questioned him extensively on when he began selling drugs, he was cross-examined as to a juvenile adjudication for trafficking, leaving him "languishing before the jury trying to explain the details of his juvenile record, and why he had testified in a manner that made him appear dishonest." (Doc. 11, p. 4). Petitioner claims that if not for the alleged ineffectiveness of counsel the outcome of the case would have been different, *id.* at 5, arguing that "since the success of Fikes' self-defense

14

claim was dependent upon the credibility of his testimony, trial counsel's mistake was fatal to

Fikes' case." (Doc. 1, p. 16) (internal citation omitted).

The Ohio Court of Appeals addressed petitioner's ineffective assistance of trial

counsel claim on the merits and determined that counsel was not deficient in his

representation and that petitioner was not prejudiced by counsel's performance:

> [*P 19] In his first assignment of error, Fikes argues that he received ineffective assistance of counsel.

> [*P 20] To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance." To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance.

> …

> [*P 25] Fikes next argues that his counsel was ineffective for questioning Fikes about when he had begun his drug-trafficking career, and for paving the way for the state to impeach Fikes with a juvenile adjudication. On direct examination, Fikes' counsel had asked him how long he had been selling drugs in Walnut Hills. Fikes stated that he had started selling drugs in October of 2004, shortly after he had quit his job at the SPCA. On cross-examination, the state questioned Fikes on this statement and impeached him with his juvenile adjudication for trafficking in cocaine in 2002.

> [*P 26] Counsel was not ineffective for asking Fikes about how long he had been selling drugs. Throughout the trial, counsel had stressed to the jury the different lifestyle of drug dealers and how they responded to situations differently because of the dangerous nature of their job. Asking Fikes this question helped to establish how long he had been enmeshed in the drug culture.

> [*P 26] Fikes further argues that this line of questioning made him appear to be dishonest because he had not revealed his juvenile adjudication on direct examination, and because counsel had previously told the jury that Fikes only had one prior felony conviction. But Fikes was not prejudiced by the introduction of

15

his juvenile adjudication. Given that the jury had already been made aware of Fikes' prior adult felony conviction and had heard extensive testimony about Fikes' involvement with the sale of drugs on the night of Preston's murder, we conclude that neither the introduction of Fikes' juvenile adjudication nor the fact that Fikes had failed to initially disclose it affected the outcome of the trial.

[\*P 28] In further support of his argument, Fikes relies on *State v. Goldson*. In *Goldson*, this court reversed the defendant's convictions for rape and gross sexual imposition involving a seven-year-old after concluding that defense counsel had rendered ineffective assistance by repeatedly mentioning the defendant's prior conviction for gross sexual imposition involving a child during opening statements and examination of the witnesses. But *Goldson* is easily distinguishable from the case at bar. Unlike defense counsel in *Goldson*, Fikes' counsel did not repeatedly mention his prior conviction and adjudication, nor did he question other witnesses about them. Moreover, in *Goldson*, the defendant's prior conviction was for the same crime that he had been on trial for. But although Fikes was on trial for murder, his prior conviction and juvenile adjudication were both drug-related. Thus, the concern that the jury would conclude that Fikes had merely been acting in conformity with his past behavior was not relevant.

(Doc. 7, Ex. 7, pp. 7-10) (internal citations and footnotes omitted).

The Supreme Court precedent setting forth the clearly-established federal legal principles applicable to the case-at-hand is *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Id.* at 687.  Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688.  "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 131 S.Ct. at 787 (citing *Strickland*, 466 U.S. at 689).  Under the prejudice prong of the *Strickland* test, petitioner must show "a reasonable probability that, but for his counsel's unprofessional

errors, the result of the criminal proceedings would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id.* (citing *Strickland*, 466 U.S. at 694).  A court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground.  466 U.S. at 697.

Under *Strickland*, "counsel's tactical decisions are particularly difficult to attack." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time the conduct occurred.  466 U.S. at 689.  Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance, and a petitioner in habeas corpus "must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy."  *Id.*

In *Harrington v. Richter*, the Supreme Court recently specified the role of federal district courts in reviewing ineffective assistance claims decided on the merits in state courts.  "Under §2254(d), a habeas court must determine what arguments or theories supported … the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Harrington*, 131 S.Ct. at 786.  "[Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with this Court's precedents."  *Id.*  "A state court must be granted a deference and latitude that are not in operation when the case involves review under the

17

*Strickland* standard itself." *Id.* at 785.  "The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* at 788. (internal quotations marks and citations omitted).

Upon review of the entire record, this Court concludes that petitioner has failed to demonstrate that the Ohio appellate court's decision is contrary to or an unreasonable application of Supreme Court precedent as to justify federal habeas corpus relief. *See Williams v. Taylor*, 529 U.S. 362 (2000).  The appellate court correctly identified *Strickland* as the controlling Supreme Court precedent and recognized that counsel's performance is entitled to "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689.  The court found that the line of questioning regarding how long petitioner had sold drugs was consistent with trial counsel's strategy to establish that drug dealers respond to situations differently due to the dangerous nature of the job and that the introduction of petitioner's juvenile record and his failure to disclose it initially would not have changed the outcome of the trial.  (Doc. 7, Ex. 7, p. 9).

The court's findings are not unreasonable.  The court reasonably determined that trial counsel made a strategic decision to directly address petitioner's lifestyle and comments during trial in order to "inform the jurors that they should not find [petitioner] guilty because they disapproved of his lifestyle or because they had been offended by his abrasive comments." (Doc. 7, Ex. 7, p. 8).[4]  Establishing petitioner's history of selling drugs was necessary to support

---

[4]    In addressing petitioner's claim that trial counsel was ineffective for making disparaging remarks about him during trial, the court commented on the overall trial strategy employed by counsel:

When viewed in context of the entire closing argument, these comments by Fikes' counsel were part of a trial strategy and were not improper.  The jury heard extensive testimony concerning Fikes' involvement with the sale of drugs.  And Fikes made several abrasive statements while

18

trial counsel's assertion that the incident was the result of "two people vying for the same territory when it came to selling narcotics." (Doc. 7, Tr. 137-38). By being explicit about petitioner being a drug dealer and emphasizing the inherent danger of the occupation (*see* Doc. 7, Tr. 497-98), trial counsel provided a plausible explanation for why his client was carrying a gun at the time of the incident and why the parties involved reacted as they did.[5] Furthermore, from *voir dire* until closing argument, trial counsel sought to focus the jury on the fact that being a drug dealer does not make petitioner guilty of murder. (*See, e.g.* Tr. 93-94, 656). The Court finds that the Ohio Court of Appeals reasonably concluded that trial counsel's performance was guided by a sound trial strategy. Accordingly, the state appellate court's determination that counsel did not provide ineffective assistance of counsel is neither contrary to nor an unreasonable application of the applicable *Strickland* standard.

Since trial counsel's strategy rested heavily on referencing petitioner's history of selling drugs, the appellate court's finding that the introduction of petitioner's juvenile drug conviction would not have changed the outcome is likewise not unreasonable under § 2254(d). Under the

---

testifying. For instance, he told the jury that he had told Tobin to "stay in a woman's place." He had additionally referred to a 40-year-old woman as "elderly," and he had mentioned being with another woman without his girlfriend's knowledge. Counsel's comments were designed to inform the jurors that they should not find Fikes guilty because they disapproved of his lifestyle or because they had been offended by his abrasive comments. Counsel's decision to address Fikes' lifestyle and comments was a strategic decision that we will not second-guess.

(Doc. 7, Ex. 7, p. 7-8).

[5]     During closing argument, for example, counsel stated "[y]ou have a situation where Josh is in Walnut Hills admittedly selling dope. He made no bones about telling you that's exactly what he was doing on June 8th of '05, and that's what he had been doing for sometime since he had left the job at SPCA. He is a drug dealer and was at that time." (Doc. 7, Tr. 655).

        With regard to explaining why the incident unfolded as it did, counsel commented as follows: "ladies and gentlemen, I think you could see through the evidence and the testimony of all of these witnesses that the streets are a place where things like this occur on a regular basis. The mindset. Put yourself in the place of these individuals. What are they thinking? Where do they live? How are they dealing with situations that we may deal with differently? We were always taught turn the other cheek, do the right thing, meet anger with compassion, and kindness. Disrespect on the street in Walnut Hills in a crime drug-related area, ladies and gentlemen, does not

"prejudice" prong of the *Strickland* test, petitioner must show that a reasonable probability exists that the result of the criminal proceedings would have been different if not for his attorney's alleged errors. The record contains ample references to petitioner's history of drug dealing and prior convictions to conclude that the introduction of the juvenile record was not prejudicial. Furthermore, sufficient evidence was offered against petitioner's self-defense claim for the Ohio appellate court to reasonably conclude that the fact that petitioner did not initially disclose the juvenile record would not have changed the outcome of the proceeding. (*See* Doc. 7, p. 36-37) (listing evidence offered against petitioner's claim of self defense)). In light of this and the other evidence presented in the case, it is highly unlikely that evidence of petitioner's juvenile record and his failure to initially disclose the conviction had a prejudicial impact on the jury's verdict in this case.

Accordingly, petitioner has failed to establish that the Ohio Court of Appeals' decision is unreasonable so as to justify federal habeas corpus relief. For the reasons detailed by that court, as well as the reasons cited above, this Court concludes that petitioner has failed to establish the ineffective assistance of counsel under the two-prong *Strickland* test.

### B.    Ground Three is not cognizable in habeas corpus.

In Ground Three petitioner alleges that the Ohio Court of Appeals invaded the province of the jury in its denial of his Rule 26(B) application. (Doc. 1, p. 20). Petitioner contends that after finding the jury instruction alleged in Ground Two to be erroneous, the appellate court "weighed the evidence, made credibility determinations, and concluded that the jury would have rejected [petitioner]'s self-defense claim." (Doc. 11, p. 13). He argues that the decision violated his Sixth Amendment right to have a jury decide his guilt or innocence. *Id.*

_____

beckon those types of responses." (Doc. 7, Tr. 661-62). 20

Petitioner's claim of error fails to give rise to a cognizable constitutional claim subject to review in this federal habeas proceeding. The Sixth Circuit has held that "habeas corpus is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings." *Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001) (citing *Kirby v. Dutton,* 794 F.2d 245, 246 (6th Cir. 1986)). Federal habeas review is not available to attack the legality of post-conviction proceedings because such proceedings are not related to a petitioner's detention. *Kirby,* 794 F.2d at 247. *See also Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007); *Alley v. Bell,* 307 F.3d 380, 386-87 (6th Cir. 2002). Petitioner's claim "must directly dispute the fact or duration of the confinement." *Kirby,* 794 F.2d at 248 (citing *Prieser v. Rodriguez,* 411 U.S. 475, 500 (1973)). A ground for relief that challenges the correctness of a state judicial proceeding and does not dispute the detention itself is not cognizable. *See Kirby,* 794 F.2d at 247-48.

Petitioner's claim that the Ohio Court of Appeals denied him his constitutional rights by denying his Rule 26(B) application challenges the constitutionality of a state post-conviction proceeding and not the conviction itself. Because a Rule 26(B) application to reopen is a collateral proceeding, *see Lopez v. Wilson,* 426 F.3d 339, 352 (6th Cir. 2005) (en banc), allegations of error in this process are not cognizable on federal habeas corpus review. *See Johnson v. Warden,* No. 1:06-cv-156, 2007 WL 2206550, at *12 (S.D. Ohio July 30, 2007); *Adkins v. Konteh,* No. 3:05-cv-2978, 2007 WL 461292, at *4 (N.D. Ohio Feb. 7, 2007). Accordingly, Ground Three of the petition should be denied as it is not cognizable on federal habeas corpus review.

C.     **Grounds Two, Four, Five and Six are procedurally defaulted.**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1)(c). *See also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 99-100 (6th Cir. 1985). If the petitioner fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, *e.g.*, to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982);

22

*Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).

Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985). *See also Weaver,* 888 F.2d at 1099. The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). A state ground is "adequate and independent" if it is "firmly established and regularly followed." *Rideau v. Russell*, 342 F. App'x 998, 1002 (6th Cir. 2009) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

In determining whether a state court rested its holding on a procedural default so as to bar

23

federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991)). Normally, a federal habeas court will find that a petitioner procedurally defaulted if the last state court rendering a decision makes a plain statement to that effect. *Harris,* 489 U.S. at 261. No such statement is necessary, however, if the petitioner failed to present the relevant issues to the state court. *Id.* at 263 n.9. *See also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). In that event, the federal habeas court may hold the claim procedurally defaulted "if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9. Where the last reasoned opinion addressing a claim explicitly relies on a procedural default, it is presumed that the last state court judgment summarily dismissing that claim likewise relied on the procedural bar. *Ylst,* 501 U.S. at 803 (1991); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *Rust*, 17 F.3d at 161; *Simpson*, 94 F.3d at 203.

If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. *See also Murray v. Carrier,* 477 U.S. 478, 495 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Sykes,* 433 U.S. at 87.

"'[C]ause' under the cause and prejudice test must be something external to the

24

petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Murray,* 477 U.S. at 488). "Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing that a factual or legal basis for a claim was not previously available." *Wilson v. Hurley,* 382 F. App'x 471, 478 (6th Cir. 2010) (citing *McClesky v. Zant,* 499 U.S. 467, 493-94 (1991)).

In the instant petition, petitioner failed to raise the underlying claims alleged in Grounds Two, Four, Five and Six on direct appeal to the Ohio Court of Appeals.[6] Thus, petitioner procedurally defaulted the claims asserted in these grounds for relief. Ohio law provides that an issue not raised on direct appeal is barred by the doctrine of *res judicata. See State v. Perry*, 226 N.E.2d 104, 105-06 (Ohio 1967) (syllabus); *State v. Combs,* 652 N.E.2d 205, 209 (Ohio App. 1 Dist. 1994) (holding that *res judicata* stops post-conviction relief for claims that could have been raised on direct appeal). The Sixth Circuit Court of Appeals has consistently recognized that under Ohio law an issue that is not raised by a petitioner on direct appeal is subsequently barred from review based on the doctrine of *res judicata. See, e.g., Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998) (recognizing procedural default of a claim in habeas petition where appellant never raised the claim on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court); *Rust,* 17 F.3d at 160-61 (finding adequate and independent state procedural rule where new claims raised in his second motion for leave to file a delayed direct appeal were barred by the Ohio Court of Appeals as *res judicata* because the petitioner had opportunity to raise constitutional claims during delayed direct appeal but failed to do so); *Leroy,* 151 F.2d at 100

---

[6] Grounds Two, Four, Five and Six allege underlying claims of trial error and independent claims of ineffective assistance of appellate counsel based on appellate counsel's failure to raise the claims of trial error on appeal.

(holding as adequate and independent state grounds the procedural default of claims raised for the first time in a petition for writ of habeas corpus on the basis of *res judicata* where petitioner failed to raise those claims in his direct appeal to the Ohio Court of Appeals and to the Ohio Supreme Court).

While petitioner raised the underlying trial error claims in Grounds Two, Four, Five and Six in connection with his Rule 26(B) application to reopen his direct appeal by asserting appellate counsel was ineffective for failing to bring the underlying claims as assignments of error, his Rule 26(B) application did not preserve the merits of those claims for habeas review. *See Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir. 2008). "[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'" *Id.* at 312 (quoting *White v. Mitchell,* 431 F.3d 517, 526 (6th Cir. 2005)). Consequently, by failing to raise the underlying trial error claims asserted in Grounds Two, Four, Five and Six on direct appeal to the state courts, petitioner has waived the claims absent a showing of cause for his default and actual prejudice as a result of the alleged errors, or that the failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750. *See also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

As cause for the procedural default, petitioner claims that his failure to raise the underlying trial error claims was due to the ineffective assistance of appellate counsel. (Doc. 1, pp. 6, 9, 21, 22). Ineffective assistance of counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim was itself procedurally defaulted. *See Murray,* 477 U.S. at 488-89. *See also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000);

*Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). In order for the ineffective

assistance of appellate counsel to serve as cause to excuse a procedural default petitioner must

show that his appellate counsel's failure to raise the claims rose to the level of a constitutional

violation under *Strickland*. *McFarland v. Yukins,* 356 F.3d 688, 699 (6th Cir. 2004). In

evaluating the ineffective assistance of appellate counsel claim, the Court must assess the

strength of the claims that appellate counsel failed to raise. *See Wilson v. Parker,* 515 F.3d 682,

707 (6th Cir. 2008). In order to amount to ineffective assistance under *Strickland*, petitioner

must demonstrate a reasonable probability that inclusion of the issue would have changed the

result of the appeal. *McFarland*, 356 F.3d at 699. "If there is a reasonable probability that [the

petitioner] would have prevailed on appeal had the claim been raised, we can then consider

whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted

to ineffective assistance of appellate counsel." *Id.* at 700.

### i. *Ground Two*

In Ground Two, petitioner alleges that he was denied his right to a fair trial under the Due

Process Clause of the Fourteenth Amendment based on the trial court's erroneous jury

instruction that "one has no duty to retreat in one's home." (Doc. 1, p. 17). Petitioner contends

that the instruction misled the jury and his appellate counsel was ineffective for failing to raise

the alleged error. *Id.*

At trial, a factual dispute arose regarding whether the situation giving rise to Mr.

Preston's death involved one or two separate incidents. (*See* Doc. 7, Tr. 658-61). Defense

counsel attempted to demonstrate that petitioner was not at fault in creating the incident giving

rise to the shooting by characterizing the facts as involving two separate incidents. *Id.* The

defense argued that the first incident occurred on a street corner near the home of Mr. Preston

27

and Ms. Tobin, during which Ms. Tobin argued with petitioner from the window of the
apartment. *Id.* at 658. According to the defense, the first situation ended when petitioner fired
his gun into the air and left the neighborhood in order to sell drugs at another location. *Id.* Trial
counsel argued that the second incident occurred fifteen to twenty minutes later, when petitioner
returned to the area to resume selling drugs and encountered Mr. Preston, who had put Ms. Tobin
and his daughter in a bootleg cab. *Id.* at 658-59. According to the defense, Mr. Preston did not
go with Ms. Tobin and his daughter in order to instigate incident number two, the fight between
Mr. Preston and petitioner. *Id.* at 660-61. Defense counsel argued that Mr. Preston remained in
order to kill petitioner and that petitioner only shot Mr. Preston in self-defense after Mr.
Preston's gun misfired. *Id.*

Over the objection of counsel, the trial court included a jury instruction indicating that a
person does not have a duty to retreat when in their home.

> [I]f you find the defendant guilty of Counts 1 and 2, you must go on to decide if
> he's proved his affirmative defense of self-defense by a preponderance of the
> evidence. The burden of proof is upon him on self-defense.
>
> One who is at fault in creating the situation that lead to the need to use deadly
> force cannot assert the defense of self-defense as a matter of law.
>
> In other words, a first aggressor who created the situation that resulted in the use
> of force cannot claim self-defense. **One has no duty to retreat in one's own
> home.**
>
> To establish self-defense, the defendant must prove he was not at fault in creating
> this situation giving rise to the fatal shooting of D'Andre Preston; and he had
> reasonable grounds to believe and an honest belief that he was in imminent
> danger of death or great bodily harm and that his only means of retreat or
> withdrawal from such danger was by use of deadly force; and he had not violated
> any duty to retreat or withdraw to avoid danger. If either one of the first two
> elements are not proven the defendant had a duty to retreat.
>
> The defendant had a duty to retreat if he was at fault in creating the situation
> giving rise to the fatal shooting of D'Andre Preston; or the defendant did not have

reasonable grounds to believe and an honest belief that he was in imminent danger of death or great bodily harm, and that his only means of escape from danger was by the use of deadly force.

But if the defendant retreated or withdrew from the situation or reasonably indicated his intentions to retreat or withdraw from the situation and no longer participated in it, he no longer had a duty to retreat. And if the defendant had reasonable grounds to believe and an honest belief that he was in imminent danger of death or great bodily harm and the only means from escape was the use of deadly force even though he was mistaken as to the existence of the danger.

(Doc. 7, Tr. pp. 736-38) (emphasis added).

In its decision denying petitioner's application to reopen his appeal, the Ohio appellate court found that appellate counsel was not ineffective for failure to raise the jury instruction claim because the error was not prejudicial: [7]

Appellate counsel's performance in failing to assign these matters as error cannot be said to have been deficient. The trial court erred in instructing the jury that "one has no duty to retreat in one's home" because, under the facts of the case, the instruction was not pertinent. But the error was not demonstrably prejudicial, because the record will not permit a conclusion that, but for the incorrect instruction, the jury would have found that Fikes had acted in self-defense.

(Doc. 7, Ex. 43, p. 2). In its decision, the court cited *State v. Cassano*, 772 N.E.2d 81, ¶75-77 (Ohio 2002), an Ohio Supreme Court case finding an erroneous "duty to retreat" instruction to be without merit because the defendant was not prejudiced by the instruction.

Petitioner contends that the erroneous instruction increased the probability that the jury would find him at fault in creating the situation giving rise to the shooting. (Doc. 7, Ex. 23, p. 3). He states that "[t]he evidence obviously suggested that [petitioner] was the initial aggressor prior to retreating from the confrontation with Preston and Tobin" and contends that the instruction pertaining to the home mislead the jury into its determination that petitioner was at

---

[7] Under Crim. R. 52, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Where the defendant has objected to an error in the trial court, the appellate court reviews the error under the harmless error standard in Crim. R. 52(A). *State v. Perry*, 802 N.E.2d 643, 646 (Ohio 2004).

fault in creating the situation resulting in Mr. Preston's death. (Doc. 11, p. 11). He claims "the no duty to retreat instruction with respect to the home may have led the jury to infer that [petitioner] was at fault in creating the violent situation, because Preston and Preston's family sought to retreat from their home." *Id.* Furthermore, petitioner argues that the state court decision is contrary to *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993) and *Cup v. Naughten*, 414 U.S. 141, 147 (1973), as he claims the instruction essentially resulted in a directed the verdict for the State and the appellate court failed to consider the effect of the instruction in light of the overall charge and complete trial record. (Doc. 11, p. 12).

 After review of the entire record, the Court finds that the state court decision was not contrary to or an unreasonable application of federal law under § 2254(d). The Ohio Court of Appeals correctly cited and applied the standard of review established in *Strickland* for evaluating ineffective assistance of appellate counsel claims and reasonably determined that counsel was not deficient. The record in this case demonstrates that the contested instruction, though erroneous, was placed within the broader context of proper jury instructions regarding self-defense. Furthermore, sufficient evidence was offered by the State for the Ohio Court of Appeals to reasonably conclude that the error would not have affected the outcome of the trial.[8] The Court cannot conclude that the instruction had the effect of directing a verdict for the State or invaded the fact finding function of the jury, as petitioner argues. (*See* Doc. 11, p. 11). The

---

[8] During trial, the following evidence was offered against petitioner's claim of self defense: Ms. Tobin, Mr. Preston's girlfriend, testified that prior to the shooting petitioner was outside her apartment initially yelling for Mr. Preston to come out of the apartment to fight him and later warning that Mr. Preston had better not come outside, (Doc. 7, Tr. 161-64), that petitioner fired his gun into the air from outside their apartment, *id.* at 162-63, that petitioner approached Mr. Preston with a gun as he was putting Ms. Tobin and their daughter into a cab, that Mr. Preston ran from petitioner, and that petitioner shot first. *Id.* at 168-70. Detective Randolph testified that a shell casing was found outside Mr. Preston and Ms. Tobin's apartment window, *id.* at 358, that petitioner was arrested the day after the shooting in Kansas, *id* at 350, and that, during his interview of the petitioner, petitioner stated that he fired his gun because he was mad, *id.* at 377-78, and that he did not believe Mr. Preston's gun worked or was loaded. *Id.* at 379. The crime scene investigator, Detective Carpenter, testified that Mr. Preston's gun was found at the crime scene twenty-four feet from Mr. Preston's body, not cocked and with the safety on. *Id. at* 302-03, 310.

jury remained free to credit petitioner's factual argument despite the instruction, and the record includes no basis on which this Court may conclude that the appellate court failed to consider the effect of the instruction in light of the complete trial record.  Since the Ohio Court of Appeals reasonably determined that the underlying jury instruction was not prejudicial, the court was not unreasonable in finding that petitioner's appellate counsel was not ineffective for failing to raise the meritless claim. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("if the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal."); *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) ("appellate counsel cannot be ineffective for failure to raise an issue that lacks merit.") (citation omitted).

The Court finds that the Ohio appellate court decision was not unreasonable under § 2254(d).  The state appellate court reasonably found that petitioner's jury instruction claim had no reasonable probability of changing the outcome of his case and therefore appellate counsel was not ineffective in failing to raise the claim.  Accordingly, petitioner has not established cause for his procedural default of the underlying trial error claim alleged in Ground Two on habeas review, or that the state appellate court's rejection of petitioner's ineffective assistance of appellate counsel claim (raised as an independent claim in Ground Two of the petition) was contrary to or an unreasonable application of federal law under § 2254(d).

### ii.  *Ground Four*

In Ground Four, petitioner alleges that he was denied the effective assistance of trial counsel based on counsel's failure to object to the testimony of Detective Randolph, who petitioner claims provided inadmissible opinion testimony on the use of excessive force.  (Doc. 1, p. 20).  He argues that his appellate counsel was also ineffective for not raising trial counsel's

alleged ineffectiveness as an error on appeal. *Id.*

During trial, Randolph testified that "[i]n claiming self-defense, you're not permitted to use excessive force. If someone is firing the gun that you believe to be unloaded or malfunctioning, in my opinion, you're not permitted to use deadly force in return, that would be considered excessive force." (Doc. 7, Tr. 379). Petitioner contends that the testimony was inadmissible because it could not have been found to aid the jury in determining the ultimate issue and had his attorneys challenged the testimony a reasonable probability exists that the outcome of his case would have been different. (Doc. 1, p. 21).

In response, respondent argues that Detective Randolph's testimony was not inadmissible, as it was introduced in the context of Randolph's interrogation of petitioner. (Doc. 7, pp. 25-27). Respondent contends that Detective Randolph was called on to investigate the self-defense claim as a factual matter, that his testimony concerned the particular details of petitioner's interrogation to which he attached significance, and that his testimony "was helpful in determining the validity of the self-defense claim through inconsistencies that appeared during the interrogation." (Doc. 7, pp. 26-27). Respondent also argues that even if the testimony was erroneous, it was not prejudicial. (Doc. 7, p. 27).

It does not appear that the Ohio Court of Appeals addressed petitioner's appellate counsel claim regarding Detective Randolph's opinion testimony on excessive force as it is raised in the instant petition. In his Rule 26(B) application, petitioner argued that his appellate counsel was ineffective because he failed to argue that trial counsel was ineffective for not effectively cross-examining the detective and for failing to object to his opinion testimony regarding whether or not petitioner used excessive force. (Doc. 7, Ex. 25). Petitioner raised these claims in his March 2, 2009 motion for leave to amend his application for reopening which appears to have been

accepted by the state appellate court. (Doc. 7, Ex. 28). However, the Ohio Court of Appeals'
decision does not specifically address whether trial counsel's failure to object to the testimony,
as opposed to conducting an effective cross-examination, would have changed the outcome of
the trial. In rejecting petitioner's 26(B) application, the Ohio Court of Appeals ruled only on the
ineffective cross-examination claim:

> Nor does the record disclose a reasonable probability that, but for the alleged
> inadequacy of trial counsel's cross-examination of the police detective, the results
> of Fikes's trial would have been different.

(Doc. 7, Ex. 43, pp. 2-3). The Ohio Supreme Court subsequently dismissed his appeal "as not
involving any substantial constitutional question." (Doc. 7, Ex. 48).[9]

In *Harrington*, 131 S.Ct. 770, the Supreme Court recently held that § 2254(d) applies in
cases where a claim for relief is denied without any explanation from the state courts. *See Couch
v. Booker*, 632 F.3d 241, 244 (6th Cir. 2011). "Where a state court's decision is unaccompanied
by an explanation, the habeas petitioner's burden still must be met by showing there was no
reasonable basis for the state court to deny relief." *Harrington,* 131 S.Ct. at 784. "[A] habeas
court must determine what arguments or theories… could have supporte[d] the state court's
decision; and then it must ask whether it is possible fair-minded jurists could disagree that those
arguments or theories are inconsistent with the holding in a prior decision of this court." *Cullen
v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 1402 (2011) (quoting *Harrington,* 131 S.Ct. at 786).

After review of the entire record, the Court finds that petitioner has not met his burden of
demonstrating that he was unreasonably denied relief on his ineffective assistance of appellate
counsel claim as alleged in Ground Four of the petition. Petitioner asserts that because "the
opinion testimony on the use of deadly force was excludable, there is a 'reasonable probability'

---

[9] Proposition of Law No. 3 of petitioner's memorandum in support included the claim raised in the instant petition
under Ground Four. (Doc. 7, Ex. 47).

that had trial counsel objected to its admission, the outcome of the trial would have been otherwise." (Doc. 1, p. 21). However, even assuming without deciding that the detective's testimony was inadmissible, petitioner must still demonstrate that the alleged error amounted to a constitutional violation under *Strickland* or, in other words, that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen*, 131 S.Ct. at 1403 (quoting *Strickland*, 466 U.S. at 686).

In the instant case, the record included sufficient evidence for the Ohio courts to have reasonably concluded that the detective's testimony on excessive force, and trial counsel's failure to object to it, did not affect the outcome of the trial. At trial the prosecution offered substantial evidence to counter petitioner's claim of self-defense.[10] Furthermore, because the challenged testimony arose in the course of a review of the detective's investigation and after the trial judge announced that the detective's testimony was his opinion and not evidence (Doc. 7, Tr. 360), it is highly unlikely that the alleged error invaded the province of the jury and resulted in the jury adopting the detective's opinion, as petitioner argues. (Doc. 11, p. 17). In fact, in response to defense counsel's objection that the state was asking Detective Randolph to draw legal conclusions based on his investigation, the trial court ruled in open court that the question regarding self-defense was an issue for the jury to decide.[11] While counsel's objections were not

---

[10] *See supra* n.8.

[11] The re-direct of Detective Randolph included the following:

> Q: Have you ever been involved in a situation where self-defense was a claim where at the conclusion of your investigation you did not file - -
> [DEFENSE COUNSEL]: Objection.
> Q: - - charges?
> [DEFENSE COUNSEL]: Objection, Your Honor. Irrelevant.
> THE COURT: We don't know if it's the same.
> [DEFENSE COUNSEL]: Calls for a legal - -
> THE COURT: Sustained. You have to have the facts to decide, and his decision whether or not to file charges is now before the injury [sic]. I fail to see how that's relevant. They are gonna decide.

raised specifically in response to the detective's testimony concerning excessive force, the record in this case would permit the Ohio courts to reasonably conclude that counsel's alleged ineffectiveness in failing to object would not have altered the outcome of the trial.

The Court finds that petitioner has not demonstrated that the Ohio courts unreasonably denied him relief. Petitioner has not convincingly argued that the denial of his ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of *Strickland* or any other Supreme Court precedent. Because the Ohio courts could reasonably determine that the alleged error did not prejudice petitioner's defense, the state courts would likewise not be unreasonable in determining that appellate counsel was not ineffective for failing to raise the meritless claim. *Davie*, 547 F.3d at 312; *Willis*, 351 F.3d at 745. Accordingly, petitioner has failed to establish cause for his procedural default of the underlying trial error claim alleged in Ground Four, or that habeas corpus relief is warranted on petitioner's independent claim of ineffective assistance of appellate counsel raised in Ground Four of the petition.

### *iii. Ground Five*

In Ground Five, petitioner claims that he was denied the effective assistance of trial counsel based on counsel's failure to challenge instances of alleged prosecutorial misconduct.

---

... 

Q:    Okay. Were there things in the defendant's statement to you that were inconsistent with self-defense?

A:    Yes.

Q:    What were those things?

[DEFENSE COUNSEL]: Your Honor, objection. It's calling for a legal conclusion. He's asking this witness to determine whether this was appropriate self-defense. That's for the jury to decide. THE COURT: Well, I know we have been off track all morning. Sustained. You can point them out on final argument.

(Doc. 7, Tr. 421-23).

(Doc. 1, p. 21). Petitioner's habeas petition and traverse include four allegations of misconduct: (1) the prosecution's suggestion to the jury that petitioner had been practicing his testimony for months and had catered his defense to the evidence against him; (2) the prosecution's argument that petitioner was at fault in creating the violent situation resulting in Mr. Preston's death when, according to petitioner, the evidence demonstrated that he withdrew from the confrontation and returned later; (3) the prosecution's misstating the testimony of Gary Utz, Chief Deputy Coroner for Hamilton County, regarding the distance between petitioner and Mr. Preston at the time of the shooting; and (4) the prosecution's urging the jury to determine whether it was reasonable for petitioner to have a gun (based on his prior felony conviction) in assessing his self-defense claim. (Doc. 11, pp. 18-22). Petitioner contends that a reasonable probability exists that the result of the trial would have been different had his counsel challenged the alleged instances of misconduct and that his appellate counsel was ineffective for failing to raise trial counsel's alleged ineffectiveness as error. *Id.* at 22.

As a preliminary matter, the Court finds that petitioner has waived his ineffective assistance of appellate counsel claim based on trial counsel's failure to challenge the second and fourth alleged instances of prosecutorial misconduct because he failed to fairly present these claims to the Ohio courts. In his motion for leave to amend his 26(B) application, petitioner sought to add an ineffective assistance of appellate counsel claim based on trial counsel's failure to challenge the first and third alleged instances of prosecutorial misconduct stated above. (Doc. 7, Ex. 25, pp. 3-4). While the Ohio Court of Appeals granted petitioner's motion and considered the merit of the claim, the court was never presented with a claim based on the second and fourth allegations of misconduct, as is presented in the instant petition.[12] *See id.* Because petitioner

---

[12] Petitioner also failed to present the claims to the Ohio Supreme Court on appeal from the Ohio appellate court's denial of his 26(B) application. (*See* Doc. 7, Ex. 47).

failed to fairly present the Ohio courts with the same claim presented in the instant petition, petitioner has waived the claim absent a showing of cause and actual prejudice, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750.

Petitioner has not made any argument establishing cause or prejudice for his procedural default of his claim involving the second and fourth alleged instances of prosecutorial misconduct or demonstrated that the failure to consider the claim will result in a fundamental miscarriage of justice. Accordingly, the Court finds that the claim involving the second and fourth instances of prosecutorial misconduct is waived on habeas review. Since petitioner's ineffective assistance of appellate counsel claim with regard to these allegations of prosecutorial misconduct is itself procedurally defaulted and he has not shown adequate cause to overcome the default, petitioner is unable to rely on the ineffective assistance of appellate counsel as "cause" for defaulting the underlying trial errors. *See Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000); *Richey v. Mitchell*, 395 F.3d 660, 679 (6th Cir. 2005); *Lancaster v. Adams*, 324 F.3d 423 437-38 (6th Cir. 2003).

In ruling on petitioner's ineffective assistance of appellate counsel claim with regard to the first and third allegations of misconduct, the Ohio Court of Appeals found that "the alleged prosecutorial misconduct, and, in turn, trial counsel's failure to object to it, would not have provided a basis for overturning Fikes's convictions because, on the record as a whole, the assistant prosecutor's comments cannot be said to have denied Fikes a fair trial." (Doc. 7, Ex. 43, p. 3). In reaching its decision, the court cited to *State v. Lott*, 555 N.E.2d 293 (Ohio 1990), an Ohio Supreme Court case dismissing a prosecutorial misconduct claim because the alleged

misconduct did not result in an unfair trial. *Lott*, 555 N.E.2d at 301.[13]

The Supreme Court has held that to prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted). The reviewing court's focus in a claim of prosecutorial misconduct is "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). A prosecutor's alleged misconduct must be examined within the context of the entire trial to determine whether it deprived a defendant of a fair trial. *United States v. Young*, 470 U.S. 1, 11-12 (1985). "Reversal is required only if the prosecutor's misconduct is 'so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant.'" *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).

Factors to be considered in weighing whether a prosecutor's misconduct amounts to a due process violation are: (1) the degree to which the misconduct has a tendency to mislead the jury and to prejudice the accused, *see Darden*, 477 U.S. at 182, *United States v. Young*, 470 U.S. 1, 12 (1985); (2) whether the misconduct is isolated or extensive, *see Donnelly*, 416 U.S. at 646; (3) whether the misconduct is deliberate, *see id.* at 647; (4) whether the prosecutor manipulated or misstated the evidence, *see Darden*, 477 U.S. at 182, *Berger v. United States*, 295 U.S. 78, 84-85 (1935); (5) the strength of the competent proof to establish the guilt of the accused, *see*

---

[13] Under Ohio law, "the test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused." *Lott*, 555 N.E.2d at 300 (citing *State v. Smith*, 470 N.E.2d 883, 885-86 (Ohio 1984).

*Darden*, 477 U.S. at 182; (6) whether the misconduct was objected to by defense counsel, *see id.* at 182-83 & n.14, *Young*, 470 U.S. at 13; and (7) whether a curative instruction was given by the trial judge, *see Darden*, 477 U.S. at 182.[14]

The Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). First, the court must determine whether the challenged statements were indeed improper. *Id.* Upon a finding of impropriety, the court then determines if the statements were so flagrant and thus violated the defendant's due process rights. *Id.*

In the instant case, the Court finds that the Ohio Court of Appeals' decision is not contrary to or an unreasonable application of federal law. As the Ohio Court of Appeals reasonably concluded, the alleged instances of misconduct were not so flagrant as to render petitioner's entire trial fundamentally unfair.

In his first allegation of misconduct, petitioner claims that the prosecutor impermissibly suggested in closing argument that petitioner had practiced his testimony for months prior to trial and formulated his defense in response to the evidence against him. (Doc. 1, p. 21). In closing, the prosecutor argued as follows:

> Now [defense counsel] says [the prosecutor] won't talk about situation A and situation B, situation A and situation B, because it's pretty clear that Situation A was started by [Mr. Preston]. And I want you to remember his testimony yesterday. This guy that's been practicing to talk to you for months about what happened, this guy that got everything in my file and got to look at it, the good, the bad and the ugly, to determine how he was gonna try to explain and justify what he did.
>
> [Defense counsel] said he never stood up here and said this was a smoking [sic] mirrors, he didn't fire the gun. You know why he didn't say that? Because he's on tape saying I fired the gun. So you can't take that angle, we got to figure out

---

[14] *See also Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (citing *Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003)).

something else.

(Doc. 7, Tr. 694). Petitioner contends that "the record does not support the prosecutor's assertion that petitioner had been practicing… his trial testimony." (Doc. 11, pp. 18-19).

Assuming without deciding that the prosecutor's comment was improper, petitioner has not demonstrated that it deprived him of a fair trial. Though defense counsel made no objection to the alleged misconduct and the trial court did not issue a curative instruction, the comment was isolated and did not rest on a misstatement or manipulation of evidence. The prosecutor's comment occurred during closing argument and in response to defense counsel's argument that the State was unwilling to acknowledge that the incident involved two separate situations. (*See* Doc. 7, Tr. 658-59). *See also, Slage v. Bagley*, 457 F.3d 501, 522 (6th Cir. 2006) (noting that prosecutors are permitted to comment in response to argument and trial strategy of defense counsel) (citing *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)). Additionally, the record provides sufficient support for the Ohio court to have reasonably concluded that the prosecutor did not misstate or manipulate the trial evidence. During trial, the prosecutor offered evidence to suggest that petitioner did not initially claim to have acted in self-defense when arrested, (Doc. 7, Tr. 367-68, 377-78), and that petitioner had access to the government's case prior to trial. *Id.* at 561-63. Furthermore, during his closing argument, defense counsel stated that he had talked to petitioner "for hours and hours and hours over the course of months and months of trial preparation." [15] *Id.* at 671. *See Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008)

---

[15] During closing argument, the prosecutor specified that his argument was based on defense counsel's comment:

> And I heard [defense counsel] when he was talking about, oh, these things that [petitioner] said were embarrassing. Oh, I couldn't believe it. I mean, I spent hours and hours, we went over this hours and hours. You remember when he said that? We talked about this and he wasn't supposed to say any of that stuff.

> Stick to the script. You got to justify what you did. D'Andre's got to be the bad guy.

("Prosecutors can argue the record, highlight any inconsistencies or inadequacies, and forcefully assert reasonable inferences from the evidence."); *Byrd*, 209 F.3d at 535 ("Prosecutors must be given leeway to argue reasonable inferences from the evidence.") (internal quotation marks and citation omitted).

In the context of the entire trial, it is highly unlikely that the prosecutor's comment misled the jury or prejudiced petitioner. The comment was only one part of a lengthy closing argument, which addressed each item of evidence offered against petitioner, as well as the specific reasons to discredit his claim of self-defense. (*See* Doc. 7, Tr. 688-718). As noted previously, *see supra* n.8, the prosecution offered substantial evidence against petitioner's claim. Based on these factors, it was reasonable for the Ohio appellate court to conclude that this remark did not render petitioner's trial fundamentally unfair.

The Ohio Court of Appeals also reasonably determined that petitioner's third allegation of misconduct did not deprive him of a fair trial. Petitioner contends that the prosecution committed prosecutorial misconduct by misstating the testimony of Deputy Coroner Gary Utz concerning the distance between petitioner and Mr. Preston at the time of the shooting. (Doc. 11, p. 20). During closing argument, the prosecutor argued as follows:

> There was one thing that Doctor Utz testified about in his testimony a couple days ago about distance determination for guns. Do you remember that? Where he said if you're about a foot, foot-and-a-half away, which is where the defendant said he was, what's gonna be on your body? In addition to the bullet going through your body, how does a gun work? This is why we asked the question. A bullet is expelled through the barrel of the gun by means of a chemical explosion. The explosion occurs, the primer residue is hit, the explosion occurs and out of the gun in addition to the bullet come all these particles that come on your clothes. A foot or foot-and-a-half which is where the defendant said this happened.
>
> There is not one fleck of residue on Mr. Preston's body or clothing, because it wasn't at close range. It was in anger and retaliation…

(Doc. 7, Tr. 692).

(Doc. 7, Tr. 711-12). Petitioner argues that the prosecutor manipulated or misstated Dr. Utz's testimony and that the alleged error may have had an impact on the jury's deliberations. (Doc. 11, p. 21).

Petitioner has not demonstrated that the Ohio Court of Appeals' ruling was unreasonable. The Court is not persuaded that the prosecutor's summarization of Dr. Utz's testimony was a misstatement or manipulation of his trial testimony, as petitioner argues. During trial, Dr. Utz testified as follows regarding his ability to make a prediction as to the distance between the gun and Mr. Preston's body at the time of the shooting:

> Well, if the gun is actually applied tightly to the skin's surface, it will produce a characteristic contact wound and we can usually see that on autopsy. If the muzzle of the gun is a few inches, it would be less than a foot or so away depending on the type of gun or ammunition, it will actually leave small abrasions around the wound that are produced by powder burning and unburnt grains of gunpowder that strike the skin and produces an abrasion.

> Now in this case, I didn't see any of those marks on the skin. He was covered by a t-shirt partially, although I didn't receive the entire shirt. It had been cut off by emergency personnel. And I saw no evidence of soot on the shirt itself.

(Doc. 7, Tr. 222-23). Dr. Utz testimony also included the following:

> Q:    So the injury, would it be your opinion that the gunshot, the distance between the body and the gun, it would be consistent with being greater than a foot?

> A:    I think in general. I mean, not having the actual weapon and actual ammunition and testing it, you can't say for certain, but in general. And when a weapon, a handgun is fired at a living person from a distance greater than a foot or a foot and a half, you don't have any evidence of stippling or soot surrounding the gunshot wound.

*Id.* at 230-31. Based on the record in this case the Court finds that the alleged misconduct was not based on a misstatement of the evidence, intentional or otherwise. To the extent that the prosecutor's summarization does differ from the deputy coroner's trial testimony, the alleged error was an isolated comment offered in conjunction with substantial evidence offered against

petitioner's claim of self-defense. *See supra* n.8. Thus, it is highly doubtful that the jury would have been swayed to convict petitioner based on the alleged misconduct. Accordingly, petitioner cannot demonstrate that the alleged error was so flagrant as to render petitioner's entire trial fundamentally unfair.

After review of the entire record, the Court finds that petitioner has not demonstrated that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of *Strickland* or applicable Supreme Court precedent regarding prosecutorial misconduct. As the Ohio appellate court reasonably determined, the alleged misconduct did not rise to the level of denying petitioner a fair trial. Because the underlying prosecutorial misconduct claims did not result in a denial of due process, petitioner cannot successfully claim that trial or appellate counsel provided ineffective assistance in failing to raise the meritless claims. *Davie*, 547 F.3d at 312; *Willis,* 351 F.3d at 745. Accordingly, petitioner has failed to establish cause for his procedural default of the underlying trial errors alleged in Ground Five, or that habeas corpus relief is warranted on petitioner's independent claim of ineffective assistance of appellate counsel raised in Ground Five of the petition.

### iv. *Ground Six*

In Ground Six of the petition, petitioner alleges a Due Process Clause violation based on the prosecutor's knowing use of perjured testimony. (Doc. 1, p. 22). Petitioner contends that his appellate counsel provided ineffective assistance under *Evitts v. Lucey*, 469 U.S. 387 (1985) by failing to raise the alleged error on appeal. *Id.* He claims that the ineffective assistance of appellate counsel serves as cause and prejudice for his failure to raise the perjured testimony claim on direct appeal. (Doc. 11, p. 3).

Petitioner offered the following supporting facts for his claim:

43

> During the direct examination of Detective Robert Randolph, the prosecutor questioned him about Fikes' response, during his taped interview in Kansas, concerning whether "Preston's gun operated and it was loaded." Randolph responded, stating, "I believe he didn't think that the gun worked or even that the gun had any bullets in it." (Tr. 379) But, on pages 12-13 of State's Exhibit 10-B, it is apparent that Fikes actually responded, stating, "I don't know if his gun worked or * * * if it had any bullets in it."
>
> Instead of correcting the testimony of Detective Randolph in which prosecutor knew or should have known to be false, he exploited it during his opening and closing arguments to the jury. (Tr. 135, 137, 709-710) On direct appeal, the Ohio appellate court held that this testimony in question was determinative for the jury's assessment of the second element of self-defense, "specifically, whether Fikes had a bona fide belief that he was in danger of death or great bodily harm." State v. Fikes, 1st Dist. No. C-060581, 2007-Ohio-5870, at ¶16. Thus, Detective Randolph's false testimony certainly could have affected the jury's decision. In sum, Fikes' appellate counsel's failure to raise this issue on appeal constitutes ineffective assistance of appellate counsel.

(Doc. 1, pp. 22-23). Petitioner claims that he fairly presented his claim of ineffective assistance of appellate counsel and the underlying issue of perjured testimony to the state appellate court by requesting leave to amend his Rule 26(B) application. (Doc. 11, p. 1).

Respondent argues that under Rule 15(A) of the Ohio Rules of Civil Procedure, the Ohio Court of Appeals had discretion to deny petitioner's motions for leave to amend his 26(B) application. (Doc. 7, p. 18). Respondent cites *Beard v. Kindler*, 130 S.Ct. 612, 618 (2009) for the proposition that a discretionary state procedural rule can serve as an adequate and independent ground to bar federal habeas review. (Doc. 7, p. 19). In the alternative, respondent argues that petitioner's claim regarding perjured testimony is without merit. *Id.* Respondent asserts that it is clear that Detective Randolph was paraphrasing what petitioner said on the interrogation video and that the detective's failure to provide a verbatim account of petitioner's comments does not support the allegation that the detective and prosecutor engaged in perjury. *Id.* Finally, respondent contends that the alleged error could not have been prejudicial because

the jury heard what petitioner actually said on the video. *Id.*

Because the Court determines that Ground Six of the petitioner is without merit, the Court declines to address whether or not petitioner procedurally defaulted his ineffective assistance of appellate counsel claim. *See Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003) ("federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.") (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)). In order to establish a due process violation based upon the introduction of perjured testimony, petitioner must show that (1) the statement was false, (2) the statement was material, and (3) the prosecution knew it was false. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citing *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986)). "The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Id.* (citing *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987)). Petitioner must demonstrate that the statement was "indisputably false," as opposed to being misleading. *Byrd,* 209 F.3d at 517.

In the instant case, the Court finds that petitioner has not demonstrated a reasonable probability that inclusion of the perjured testimony claim would have changed the result of his appeal. *See McFarland*, 356 F.3d at 699. There is no significant difference between petitioner's statement during his interview with Detective Randolph and the detective's recollection of the

45

interview during his trial testimony.  (Doc. 7, pp. 19-20).  The transcription of petitioner's June 10, 2005 interview indicates petitioner stated the following:

> Detective Randolph:  Right.  When he was tussling with you to try to get your gun, do you know what happened to his, did you see ?
>
> Mr. Fikes: (inaudible).  I don't know if he still had it in his hand or not.
>
> Detective Randolph:  Okay.
>
> Mr. Fikes: **That's what made me think like, that I don't know if his gun worked or**
> -
> Sergeant Priestle: Right.
>
> Mr. Fikes: **-- if it had any bullets**, to try to take mine.

(Doc. 10, Tr. 12-13) (emphasis added).  During trial, Detective Randolph testified as follows:

> Q:  When you talked to the defendant on tape about how Mr. Preston used his gun and about whether or not Mr. Preston's gun operated and it was loaded, what was the defendant's answer?
>
> A:  I believe he didn't think that the gun worked or even that the gun had any bullets in it.

(Doc. 7, Tr. 379).

The Court finds no discernable difference between Detective Randolph's testimony and petitioner's comments during his interview.  In addition, the jury was provided with the transcript of petitioner's statement and the actual statement was played during trial.  (*See* Doc. 7, Tr. 374-75).  Therefore, petitioner cannot demonstrate that he was prejudiced by the alleged error or that his trial or appellate counsel was ineffective for failing to raise the meritless claim. *Davie*, 547 F.3d at 312; *Willis*, 351 F.3d at 745.

The Court finds that petitioner has not demonstrated a reasonable probability that his appeal would have been successful if the alleged error was raised on appeal and, therefore,

appellate counsel was not ineffective for failing to raise the claim. Accordingly, petitioner has not established cause for his procedural default of the underlying trial error claim alleged in Ground Six, nor has he established his freestanding appellate counsel claim in Ground Six of the petition.

### v. *Petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are not considered.*

Finally, petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are not considered or, in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96. *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498. To establish a credible claim of actual innocence sufficient to excuse his procedural defaults, petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324.

Petitioner must also show "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, including that evidence alleged "to have become available only after the trial." *Id.* at 327-28. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. The Court notes that actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). *See also Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir. 1998). The actual innocence exception should "remain rare"

and "only be applied in the 'extraordinary case.'" *Schlup,* 513 U.S. at 321.

Petitioner has failed to establish a credible claim of actual innocence under the *Schlup* standard as he has not supported his allegations of constitutional error with any new evidence of actual innocence. Petitioner's habeas petition and traverse focus solely on his constitutional claims. (*See* Docs. 1, 11). Accordingly, the Court is unable to reach the merits of his claims. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup,* 513 U.S. at 316. Therefore, petitioner has not demonstrated that his procedural defaults should be excused under the "fundamental miscarriage of justice" exception.

Accordingly, in sum, the Court concludes that Ground One of the petition is without merit and Ground Three is not cognizable in federal habeas corpus. Petitioner has procedurally defaulted his claims for relief in Grounds Two, Four, Five and Six by failing to comply with the doctrine of *res judicata.* Because petitioner has not demonstrated "cause" for his procedural defaults or that a fundamental miscarriage of justice will occur if his claims are not considered by this Court, the undersigned concludes that petitioner has waived his claims for federal habeas relief. Finally, petitioner's freestanding ineffective assistance of appellate counsel claims asserted in Grounds Two, Four, Five and Six are without merit. Therefore, it is **RECOMMENDED** that petitioner's petition for writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

### IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

48

2.  A certificate of appealability should not issue with respect to the underlying trial errors alleged in Grounds Two, Four, Five and Six, which this Court has concluded are waived and thus barred from review on a procedural ground, because "jurists of reason would not find it debatable as to whether this Court is correct in its procedural ruling" under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000).[16]

3.  A certificate of appealability should not issue with respect to any other claims alleged in the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  5/16/2011

Karen L. Litkovitz
United States Magistrate Judge

rh

---

[16] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his grounds for relief. *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOSHUA FIKES,                                          Civil Action No. 1:10-cv-021
     Petitioner,

                                        Spiegel, J.
   vs.                                                 Litkovitz, M.J.

WARDEN, WARREN CORRECTIONAL
INSTITUTION,
     Respondent.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☑ Agent ☐ Addressee<br>B. Received by ( *Printed Name* )    C. Date of Delivery |
| 1. Article Addressed to:<br><br>Joshua Fikes 526-828<br>Warren Corr Inst.<br>PO Box 120<br>State Route 63<br>Lebanon, Ohio 45036 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*   ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7001 2510 0008 6348 7028 |

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

1:10 cv 21    Doc. 16